**Howard HARRELL and Sarah Harrell, Plaintiffs–Appellees,**

v.

**Donald COOK, Jack Woods, John Keenan, and a police officer unknown to plaintiffs, Defendants–Appellants.**

No. 97–3404.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 25, 1998.

Decided Feb. 17, 1999.

Charles W. Courtney, Jr. (argued), Belleville, IL, for Plaintiffs–Appellees.

Kenneth D. Reifsteck (argued), Thomas, Mamer & Haughey, Champaign, IL, for Defendants–Appellants.

Before POSNER, Chief Judge, WOOD, JR., and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Not everyone believes that banks are the safest or most desirable place to keep cold, hard cash, notwithstanding the existence of safeguards like federal deposit insurance. Howard and Sarah Harrell were among the skeptics. The Harrells had in excess of $95,-000 stashed away in a cooler in the crawl space under their house. One day, they discovered that the cash, but not the cooler, had vanished. This case arises out of their belief that the local police department bungled the investigation, or worse, when it lost key evidence. They sued Jacksonville, Illinois, police officers Donald Cook, Jack Woods, John Keenan, and any unknown officers involved in the disappearance of the cooler under 42 U.S.C. § 1983, alleging that the officers deprived them of their due process rights to proceed against the suspected thief in court. The police responded with a motion to dismiss, which the district court denied. Before us now is the narrow question whether the district court correctly rejected the officers' claim of qualified immunity. We conclude that the court should have granted the officers' motion and dismissed the claims against them.

I

This case centers around one of two large containers the Harrells had buried in the crawl space beneath their house. One of the containers was an ordinary chest cooler, in which the Harrells had placed the extraordinary amount of $95,854.70. On July 11, 1995, the Harrells discovered that the chest cooler had been unearthed and its contents were missing. The only other party who had had access to the crawl space where the money was buried was a contractor whom the Harrells had hired to work on their home between January 9 and July 11, 1995.

The Harrells took their story and the now-empty cooler (as well as some smaller containers housed therein that the Harrells had used for organizing the money) to the Jacksonville Police. They spoke with Assistant Police Chief John Keenan, who told them that the contractor was his number-one suspect. (There is some disagreement in the record about the spelling of the name of defendant John "Keenan." We use here the spelling that Keenan's lawyer adopted, rather than plaintiffs' "Canaan" or the district court's "Keehan.") Keenan accepted possession of the cooler and its containers, saying that he would have them tested for fingerprints. The next day, Keenan told the Harrells that he would be sending investigators to their home to pursue the lost funds. More than two weeks later, Jacksonville Police Officer Jack Woods arrived to photograph the Harrell home. He broke the bad news that the cooler and its containers were missing, apparently lost by the police department. Although the Jacksonville police had a policy of placing evidence in the department's evidence room, the Harrells' evidence had last been seen in the police garage by Assistant Chief Keenan and Officers Woods and Cook.

Following the disappearance of the cooler, the Harrells repeatedly met with Cook to encourage the continued investigation of the theft. Despite their efforts, the police dropped the criminal case and made no effort to pursue the loss of the cooler. Moreover, as the Harrells' attorney explained at oral argument, without the cooler and the fingerprints they hoped to find on it, the Harrells did not believe they had enough evidence to pursue a civil claim for conversion against the contractor. Apparently without recourse against the suspected thief, the Harrells turned to 42 U.S.C. § 1983 and brought this three-count complaint against the City of Jacksonville and its police department, and against Keenan, Woods, Cook, and any unknown officer or officers who disposed of or absconded with the Harrells' evidence.

Count I of the Harrells' complaint alleged that the individual officers deprived them of their rights to proceed against the person or persons responsible for the theft of their money. Count II alleged that the defendants acted intentionally and sought punitive damages. In Count III, the Harrells argued that the City of Jacksonville maintained a custom or policy of not investigating citizen complaints of wrongdoing by the police force, a claim that was dismissed by the district court and is not a subject of this appeal.

The defendants filed a motion to dismiss on the ground that they were entitled to qualified immunity, because the Harrells failed to allege a violation of a clearly established federal right. The district court denied the motion, finding first that the plaintiffs had properly alleged a violation of their right to meaningful access to the courts, as provided by the First and Fourteenth Amendments. The court further found that this constitutional right was clearly established at the time of the alleged violation, and hence the defendants were not protected by qualified immunity.

## II

■■■ Relief under § 1983 is available to a plaintiff who can demonstrate that a person acting under color of state law deprived the plaintiff of a right, privilege, or immunity secured either by the Constitution or by federal law. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Nonetheless, the doctrine of qualified immunity often operates to shield public officials from liability for civil damages. In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 817–18, 102 S.Ct. 2727. See also *Crawford–El v. Britton,* 523 U.S. 574, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998). Qualified immunity depends on the objective legal reasonableness of the defendants' actions, not on their subjective motivations. *Levenstein v. Salafsky,* 164 F.3d 345, 350–51 (7th Cir.1998). In order to survive a defense motion to dismiss on qualified immunity grounds, a plaintiff must show (1) that she has asserted a violation of a constitutional or statutory right, and (2) that the applicable legal standards were clearly established at the time the defendants acted. *Id.*; see also *Kelley v. Myler,* 149 F.3d 641, 648 (7th Cir. 1998).

■■■ Because qualified immunity is designed to protect defendants from the burden of suit, as well as the burden of liability, it is a question that should be resolved as promptly as possible. For that reason, the Supreme Court has recognized that defendants are entitled to take an immediate appeal under 28 U.S.C. § 1291 from a denial of qualified immunity, as long as the resolution of the immunity issue itself does not turn on disputed facts. See, *e.g., Behrens v. Pelletier,* 516 U.S. 299, 301, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Weir v. Propst,* 915 F.2d 283 (7th Cir.1990). In this case, because qualified immunity was raised in a motion to dismiss, the procedural posture of the case itself assures the absence of factual issues. Instead, as is always the case with a Rule 12(b)(6) ruling, we take the allegations of the plaintiffs' complaint as true, construing them liberally and viewing them in the light most favorable to the plaintiffs. *Triad Associates, Inc. v. Robinson,* 10 F.3d 492, 495 (7th Cir. 1993). Because this appeal presents only issues of law, the standard of review is *de novo. Id.*; see also *Marshall v. Allen,* 984 F.2d 787, 793 (7th Cir.1993).

■■■ In undertaking our analysis of the Harrells' claims, it is necessary to consider Counts I and II of the complaint separately. Count I alleges that the defendants improperly stored the Harrells' evidence and then refused to investigate its loss, causing the deprivation of the Harrells' right to proceed in court. Nowhere does it allege an intentional interference with that right, however, and thus it boils down to a claim of negligent interference with the right of access to the courts. In contrast, Count II alleges an intentional violation of the plaintiffs' constitutional rights. Paragraph 27 maintains that the defendants "acted intentionally to deprive plaintiffs of their rights by disposing of or absconding with plaintiffs' evidence." This language is sufficient to encompass the claim that the defendants intentionally rid themselves of the cooler in order to prevent the Harrells from suing the person whom they believed to have stolen their money. The defendants have remarked that this allegation also resembles a state law tort claim for spoliation of evidence, see *Boyd v. Travelers*

*Insurance Co.*, 166 Ill.2d 188, 209 Ill.Dec. 727, 652 N.E.2d 267 (1995), and they suggest this is a fatal flaw for the plaintiffs. They are wrong. As we repeatedly have held, see, *e.g., Bennett v. Schmidt*, 153 F.3d 516 (7th Cir.1998); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir.1992), under Rule 8 of the Federal Rules of Civil Procedure, plaintiffs have no obligation to plead legal theories. The fact that more than one legal theory might fit the events described in Count II is immaterial, as long as the allegations give notice of a legally sufficient claim under federal law.

■ As we noted above, when the defendants have raised an immunity defense, the plaintiffs' initial burden is to show that they have asserted a violation of a constitutional or statutory right. With respect to Count I, the Harrells have failed to do so. It is well established that negligent conduct by a government official is insufficient to support a claim under § 1983. *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Nabozny v. Podlesny*, 92 F.3d 446, 453–54 (7th Cir.1996); *Eberhardt v. O'Malley*, 17 F.3d 1023, 1029 (7th Cir.1994). Accordingly, the district court should have dismissed Count I, not just on qualified immunity grounds, but on the merits. See *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).

■ Although it is a closer matter, we also conclude that the defendants are entitled to qualified immunity with respect to Count II. The first question we must answer is whether the Harrells have asserted a violation of a constitutional right. Our decision in *Vasquez v. Hernandez*, 60 F.3d 325 (7th Cir. 1995), as well as earlier cases cited there, establishes that they have.

The right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth Amendments. *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 76 L.Ed.2d 277 (1983); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir.1984). A corollary of this right is that efforts by state actors to impede an individual's access to courts or administrative agencies may provide the

basis for a constitutional claim under 42 U.S.C. § 1983. Judicial access must be "adequate, effective, and meaningful," *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and therefore, when police officers conceal or obscure important facts about a crime from its victims rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged. *Bell*, 746 F.2d at 1261; *see also Stone v. City of Chicago*, 738 F.2d 896 (7th Cir.1984); *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983).

60 F.3d at 328. The allegations in this complaint raise the same specter of police action that makes hollow the right to seek redress that the *Vasquez* court described. Under those allegations, the Harrells could introduce evidence (if they could gather it) tending to show that the police officers were in cahoots with the contractor and that they deliberately removed the cooler from the police garage intending that the loss of this key evidence would foil the Harrells' efforts to pursue legal action against the contractor. Deliberate destruction of evidence can sabotage a case just as effectively as the conduct described in *Bell*, if it effectively deprives the plaintiff of essential proof. For purposes of the first part of the immunity analysis, we therefore conclude that the Harrells have made an adequate showing.

■ The more difficult question is whether it was clear at the time the officers acted—in July 1995—that this type of police misconduct amounted to a constitutional violation, rather than a simple state tort action of some kind. For a right to be "clearly established" in this sense, "[t]he contours of the right must be· sufficiently clear that a reasonable official would· understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). See also *Triad Associates*, 10 F.3d at 496.

Both *Ryland* and *Bell* involved outright concealment of a claim, not destruction of evidence that would help to support a claim. In *Ryland*, the court held that two state prosecutors violated plaintiffs' right of access to the courts by intentionally hiding and falsifying evidence that a third prosecutor had killed the plaintiffs' daughter. *Bell* was similar: there this court held that a claim had been stated about right of access to the courts when plaintiffs alleged that city police officers had conspired to cover up the killing of plaintiffs' relative by a fellow police officer.

*Ryland* and *Bell* therefore would put a reasonable police officer on notice that she could not take steps to conceal the very commission of a crime and thus utterly bar the victim from seeking redress in the courts. What happened here, however, was short of such a total denial of access. Instead, taking the Harrells at their word, the defendants intentionally made it more difficult for them to pursue their theft case against the contractor by destroying a key piece of evidence. The Harrells knew the identity of the likely perpetrator before the police did. They allege that the cooler might have provided unambiguous proof of the perpetrator, if fingerprints had been found, but they do not and could not allege that the cooler was the only evidence of the crime. They had information about the amount of money in the cooler and knowledge about the sequence of events that occurred and the contractor's access to the cooler. Furthermore, the notion that the cooler was the *sine qua non* of their case is speculative, at best. Fingerprints are not always easy to lift, and it is possible investigators would have found nothing. In sum, we find that it is not clear enough that the *Ryland/Bell* approach would be extended to this kind of case, even taking the facts as favorably as we can to the Harrells, to warrant a denial of qualified immunity for these police officers.

We therefore REVERSE the judgment of the district court and hold that the defendant police officers were entitled to qualified immunity from suit.