Theresa KITZMAN–KELLEY, Guardian for and on behalf of Melissa KITZMAN–KELLEY, Plaintiff–Appellee,

v.

Donald WARNER, Gary T. Morgan, and Gordon Johnson, Defendants–Appellants.

No. 98–2139.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 27, 1999

Decided Feb. 10, 2000

Richard A. Dahl (argued), Newport Beach, CA, for plaintiff–appellee.

A. Benjamin Goldgar, Office of Attorney General, Civil Appeals Division, Elizabeth R. Schenkier (argued), Chicago, IL, for defendants–appellants.

Before POSNER, Chief Judge, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

Melissa Kitzman–Kelley, through Theresa Kitzman–Kelley, brought this § 1983 action against employees of the Illinois Department of Children and Family Services ("DCFS"). She claims that in 1985, while a ward of the DCFS, she was sexually abused by a DCFS intern hired and supervised by the defendants. The original action was brought in state court, and the case later was removed to the district court. The defendants then moved for dismissal on the pleadings, contending that they were entitled to qualified immunity. The district court denied the motion. An interlocutory appeal was then taken to this court. *See Johnson v. Fankell*, 520 U.S. 911, 915, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997); *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). For the reasons set forth in this opinion, we now remand this case to the district court with instructions to address Ms. Kitzman–Kelley's motion to amend her complaint and then to decide again whether defendants are entitled to qualified immunity.

# I

## BACKGROUND

### A.

■ When considering a motion to dismiss a complaint on the basis of qualified immunity, we must accept all allegations in the complaint as true, construing them in the light most favorable to the plaintiff.

*See Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir.1999); *Martinez v. Hooper*, 148 F.3d 856, 858 (7th Cir.1998).

In 1981, Melissa Kitzman–Kelley, then 7 years old, was placed in the custody of the DCFS. According to the allegations of the complaint, between early March and late May 1985, Philip Keith Heiden, an intern in the Rock Island County DCFS office, subjected her to a pattern of sexual abuse. Heiden had been taken on as an intern at DCFS despite a history of mental illness and drug problems. The defendants,[1] the complaint alleges, did nothing to investigate his background before hiring him, and did not train him in the proper behavior toward his charges. Nor were there any department policies requiring anyone to do such a background investigation or perform such training. Heiden's notes reported that he had picked Kitzman–Kelley up at school, and also stated that he had taken her to his home. Despite these disclosures in his records, the defendants did not take Melissa out of his care.

### B.

Although clearly recognizing that the issue of qualified immunity may, in some instances, be resolved at the pleadings stage of the litigation, the district court determined that such an adjudication would be inappropriate on the present record. In reaching that decision, the district court acknowledged that there are situations in which the state, by virtue of its special relationship with an individual, has a special responsibility, protected by the Due Process Clause of the Constitution, for the welfare of an individual. *See De-Shaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 201 n. 9 (1989). In denying the motion to dismiss on the ground of qualified immunity, the district court somewhat laconically stated:

1. At the time relevant to the events at issue, Donald Warner was the supervisor of the Rock Island County office of the DCFS; Gordon Johnson was the director of the entire department; Gary Morgan was the department's guardianship administrator.

The factual allegations in this case remain somewhat cloudy. Based on the *DeShaney* court's recognition that certain relationships between a state and a child may place a constitutional duty on the state, this Court finds that it would be premature at this juncture to dismiss the claims. In this case the issue of qualified immunity will have to be finally resolved at the summary judgment stage.

Order of March 30, 1998, at 5.

## II

## DISCUSSION

### A.

◼ Qualified immunity protects government officials from monetary liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity provides not only a "mere defense to liability" but also *"immunity from suit."* *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (emphasis in original). This protection is afforded public officials in order to protect them from the expenses of litigation and the diversion of official energy from pressing public issues, and the deterrence of able citizens from accepting public office. *Id.*

◼ In *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1714 n. 5, 140 L.Ed.2d 1043 (1998), the Supreme Court of the United States set forth the appropriate methodology for adjudicating a motion to dismiss on the ground of qualified immunity at the complaint stage of the litigation. *Lewis* counsels that the "better approach" is for the district court to consider first the question of whether the complaint states a cause of action. If the district court determines that a cause of action has been stated, it must then determine whether qualified immunity nevertheless shields a defendant from trial and possible liability.

*See also Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Since the Court's pronouncement in *Lewis*, it has twice repeated this directive. In *Conn v. Gabbert*, 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999), the Court said, "Thus a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* at 1295. This language was quoted in *Wilson v. Layne*, 526 U.S. 603, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999).

### B.

◼ To state a claim under section 1983, a plaintiff must allege that the defendant has acted under the color of state law and has deprived him of a right secured by the Constitution or laws of the United States. There is no dispute, in this case, that the alleged conduct of the defendants is under the color of state law. They claim, however, that their actions violated no constitutionally protected rights.

#### 1.

In *DeShaney*, the Supreme Court of the United States, affirming a decision of this court, held that a state's failure to protect an individual against private violence generally does not constitute a violation of the Due Process Clause. That clause, reasoned the Supreme Court, imposes no duty on the state to provide members of the general public with adequate protective services. Rather, the Due Process Clause is a limitation on the states' power to act; it is not a minimum guarantee of certain levels of safety and security. The court did acknowledge, however, that a narrow exception to the *DeShaney* doctrine does exist in those instances in which the state has created a "special relationship" with the victimized individual. That affirmative duty arises, the Supreme Court emphasized, not simply from the state's knowledge of the individual's predicament but

from the limitations that the state has imposed upon him through a restraint on his personal liberty.

Our court, in dealing with the "special relationship" exception to the *DeShaney* doctrine, has remained faithful to the Supreme's Court's rationale that this exception must be grounded in a prior restriction of the individual's liberty that places that person in a danger that would not have been encountered, at least to the same order of magnitude, in the absence of the state's action. For instance, in *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), the City of Waukegan was determined to be not liable for failing to save the drowning plaintiff because the city had no duty to provide rescue services. *Id.* at 1428. By contrast, the claim against Lake County was reinstated because the plaintiff had alleged that the county had a custom of requiring officers to prevent unauthorized persons from trying to rescue the drowning. The court distinguished *DeShaney*, holding that the alleged policy would constitute an active imposition that put people at harm, not a refusal to provide services. Similarly, in *J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267 (7th Cir.1990), the plaintiffs argued that school children had a special relationship with school employees, requiring the employees to protect the children from a molester. *See id.* at 271–72. The court noted that, although "prisoners and mental patients are [not] an exhaustive list of all persons to whom the state owes some affirmative duties," school children were not in state custody. *See id.* at 272. The court reasoned that people in state custody "are unable to provide for basic human needs like food, clothing, shelter, medical care, and reasonable safety," *id.*, and that

school children did not fit that description, *see id.* at 272–73.

Our most recent cases continue to adhere to the principles enunciated in *DeShaney*. In *Monfils v. Taylor*, 165 F.3d 511 (7th Cir.1998), *cert. denied*, —— U.S. ——, 120 S.Ct. 43, 145 L.Ed.2d 39 (1999), the court discussed the history of the "special relationship" doctrine: "The basis of a special relationship is that the state has some sort of control or custody over the individual, as in the case of prisoners, involuntarily committed mentally ill persons, or foster children. The state's duty to protect those persons or to provide services for them arises from that custody or control." *Id.* at 517. In *Hutchinson v. Spink*, 126 F.3d 895 (7th Cir.1997), we acknowledged that "the State has a 'special relationship' with those it has taken into custody. In *K.H. v. Morgan*, 914 F.2d 846 (7th Cir.1990), this court held that once the State removes a child from her natural parents, it assumes at least a rudimentary duty of safekeeping." *Id.* at 900 (citations omitted). That suit involved a suit by a child's mother after her child died while in foster care, and the court found that the mother had stated a claim.

**2.**

In addition to alleging a "special relationship" between the state and the victim, the complaint must also allege several other elements. First, personal involvement is a prerequisite for individual liability; there is no respondeat superior liability in the § 1983 context. Moreover, to succeed in her claim, the plaintiff must allege that the defendants themselves acted with "deliberate indifference." *See Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir.1997).[2] Therefore, although it is

---

**2.** It cannot be said that allegations that the government failed to act are necessarily allegations of mere negligence, because the government's failure to act sometimes rises to the level of deliberate indifference. *See Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir.1997); *Pavlick v. Mifflin*, 90 F.3d 205, 208 (7th Cir.1996); *Tapia v. City of Greenwood*,

965 F.2d 336, 338–39 (7th Cir.1992); *Graham*, 915 F.2d at 1101; *see also Walker v. Rowe*, 791 F.2d 507, 511 (7th Cir.), *cert. denied*, 479 U.S. 994, 107 S.Ct. 597, 93 L.Ed.2d 597 (1986) (explaining that the government's failure to act on behalf of one with whom it has a special relationship may be actionable).

permissible to base a § 1983 claim on a failure to screen properly a candidate for a public position, our case law makes clear that the plaintiff must allege and establish that the defendants went about the hiring process with "deliberate indifference." *See Graham v. Sauk Prarie Police Comm'n*, 915 F.2d 1085, 1103 (7th Cir. 1990). As our colleagues in the Tenth Circuit have noted, the "deliberate indifference" standard is not met by a showing that hiring officials engaged in less than careful scrutiny of an applicant resulting in a generalized risk of harm. The requisite showing of culpability "requires a strong connection between the background of the particular applicant and the specific constitutional violation alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir.1998).

■ Similarly, it is also permissible to predicate a § 1983 action on the failure to train adequately the government agent who is alleged to have committed the constitutional violation. In the context of municipal liability, the Second Circuit has approached questions of adequate training under a three-part framework that might serve as a useful guide in assessing the allegations against the individual defendants in a case such as the present one.

> [T]his court [has] listed three showings required to support a claim that a municipality's failure to train amounted to "deliberate indifference" of the rights of citizens: (1) that "a policy maker ... know[ ] 'to a moral certainty' that ... employees will confront a given situation"; (2) that "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the ... employee will frequently cause the deprivation of a citizen's constitutional rights."

*Young v. County of Fulton*, 160 F.3d 899, 903–04 (2d Cir.1998) (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir.1992)). In the context of this case, the difficult issue is posed by the second prong of this approach. To satisfy that prong, Kitzman–Kelley must show one of two things: that there is a history of child welfare employees molesting the children in their care; or that someone inclined to commit child abuse could be deterred through proper training. In considering this latter question, it is necessary to determine, of course, whether the sort of sexual assault alleged here can be avoided by "training" the perpetrator. *Cf. Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1241 (10th Cir.1999) ("We are satisfied that a supervisor's liability for failing to train subordinates or to implement a policy to prevent a sexual assault on a severely disabled child ... was clearly established ... when the instant assault occurred."); *Barney*, 143 F.3d at 1308 (citing *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir.1996)) ("Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior.").

With respect to the failure to supervise allegation, the plaintiff must show that these defendants, through their personal actions, were deliberately indifferent in their failure to supervise adequately the alleged perpetrator.

### 3.

If a district court determines that a claim has been stated under § 1983, it must then address whether the defendants are entitled to the defense of qualified immunity. The plaintiff must demonstrate that at the time of the alleged unconstitutional actions of the defendants, there was clearly established law holding that their actions violated rights secured by the Constitution of the United States. *See Burgess v. Lowery*, 201 F.3d 942 (7th Cir. 2000). At the time of the alleged incidents, it was clearly established that under certain circumstances the state had a duty to act on behalf of those with whom it had a special relationship. *See, e.g., Youngberg v. Romeo*, 457 U.S. 307, 315, 102 S.Ct.

2452, 73 L.Ed.2d 28 (1982); *Parham v. J.R.*, 442 U.S. 584, 619, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979); *Estelle v. Gamble*, 429 U.S. 97, 103–05, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Jackson v. Byrne*, 738 F.2d 1443, 1446–47 (7th Cir.1984). The district court will have to consider whether, in light of these cases, the rights allegedly violated were clearly established in 1985. A more precise analysis must, under the methodology mandated in *Lewis*, await the district court's ruling on an amended complaint.

## C.

■ We turn now to the situation before us. As we have noted, the district court, in declining to dismiss the case, held tersely that the "factual allegations in this case remain somewhat cloudy" and that factor, coupled with *DeShaney*'s recognition that certain relationships between a state and the child may place a constitutional duty on the state, make dismissal "premature." This ambiguity in the district court's decision is further complicated by the nature of the complaint itself. The second amended complaint, which is still the operative complaint for purposes of this appeal, was filed by Larry A. Woodward, then Ms. Kitzman–Kelley's attorney, in the Rock Island County Circuit Court.[3] In January 1996, Mr. Woodward left private practice, and he encouraged Ms. Kitzman–Kelley to find replacement counsel. In October 1996, he moved to withdraw as Kitzman–Kelley's attorney, and his motion was granted by the magistrate judge.

After Ms. Kitzman–Kelley obtained several postponements, her new attorney, Richard Dahl, filed an appearance on January 20, 1998, and filed a memorandum objecting to the magistrate judge's report. In that filing, Dahl requested time to file supplemental authority, and to enter an amended complaint. On January 28, the district court ordered Dahl to explain why it should allow the complaint to be amended. Dahl responded that the complaint "is not pled as a complaint in federal court should be pled, with the federal claims first and a statement for the basis of federal jurisdiction. Plaintiff wanted to correct this and otherwise clean up the language in the complaint to keep the record clear." Filing of February 11, 1998.

The district court, rather than grant leave to file an amended complaint, ordered Kitzman–Kelley on March 18 to file a "Statement of Facts" to determine whether qualified immunity attached. Kitzman–Kelley filed the statement on March 24. The district court issued the order that is the subject of this appeal on March 30, and defendants took their appeal on April 29.

The combination of these circumstances make the prudent course to vacate the judgment before us and to remand the case to the district court. The district court ought to address first counsel's request to amend the complaint. After that matter has been resolved, the court ought to revisit, employing the methodology set forth by the Supreme Court in *Lewis* and its progeny, the question of whether the defendants are entitled to qualified immunity.[4] We respectfully suggest that the ultimate resolution of this matter will be greatly expedited by the district court's providing a more ample explanation of its reasons for its ruling.

Accordingly, the judgment of the district court is vacated and the case is remanded for proceedings consistent with this opin-

---

3. This case was initially filed in August 1993 in the state court, was promptly removed to federal court, was remanded back to the state court in March 1995, and then in August 1996 was again removed to federal court.

4. We assume that the defendants will once again ask for a ruling on this issue at the pleading stage of the litigation. Under the circumstances presented here, we do not believe that such a request could be considered frivolous. *See Bakalis v. Golembeski*, 125 F.3d.576, 578 (7th Cir.1997).

ion. The parties shall bear their own costs in this court.

REMANDED with INSTRUCTIONS

POSNER, Chief Judge, dissenting.

There is no purpose to be served by remanding this case, since it is obvious that the district judge will have to grant the defendants immunity—indeed will have to dismiss the suit for failure to state a claim. Far from being clearly established when the events giving rise to the suit took place, *Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Zorzi v. County of Putnam*, 30 F.3d 885, 891 (7th Cir.1994), the right that the plaintiff seeks to vindicate did not exist then and does not exist now. This is apparent even when the facts are viewed in the light most favorable to her, which is the view we must take in deciding an interlocutory appeal from the denial of a claim of official immunity. *Johnson v. Jones*, 515 U.S. 304, 313–18, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Burgess v. Lowery*, 201 F.3d 942, 944 (7th Cir.2000); *Merritt v. Shuttle, Inc.*, 187 F.3d 263, 267 n. 3 (2d Cir.1999).

Melissa Kitzman–Kelley was in 1985 an eleven-year-old ward of the State of Illinois, which had placed her with foster parents. The supervisory employees of the state's welfare department who are sued in this case hired Philip Heiden, a college student, as an intern and assigned him to work with the caseworker assigned to Melissa. (Heiden is also named as a defendant, but he is not an appellant.) Heiden was hired on the recommendation of one of his professors, and the defendants did not bother to investigate his background; had they done so, they would have discovered that he had a history of mental illness and drug abuse. After he was hired, on several occasions he took Melissa to his home and there sexually abused her. The defendants did not monitor his work with Melissa. He kept detailed notes of his sessions with her and turned them into his supervisors, but they didn't bother to read them. Had they done so, they would have discovered that he was taking her to his home, though not that he was sexually abusing her.

The defendants were negligent in failing to investigate Heiden's background and to monitor his work with Melissa, but negligence, as the plaintiff fails to understand but my colleagues rightly emphasize, is not a basis for liability under 42 U.S.C. § 1983. E.g., *West v. Waymire*, 114 F.3d 646, 650–52 (7th Cir.1997). Yet that is all that is charged in the original complaint, the proposed amended complaint, the statement of facts submitted to the district judge, and the statement in the plaintiff's brief in this court. The claim is not that the defendants realized they had placed Melissa in a situation of danger by assigning Heiden to her case, but that they should have taken steps to discover whether he was competent and responsible. As the statement of facts that the plaintiff's lawyer submitted to the district court explains, the defendants are guilty of "failing to check the background of the child abuser working for the state, ... failing to monitor Heiden's performance of service, ... failing to review the reports Heiden prepared which indicated the work was done in Mr. Heiden's home, and ... failing to establish policies with regard to any of these issues to protect children in the custody of the Defendants." These are classic negligence allegations, and there is no more. The defendants doubtless should have been more careful and not relied entirely on a professor's recommendation, but the failure to exercise due care is precisely what the law means by negligence. It is not as if they had entrusted Melissa to someone whom they knew to have a record as a child molester; that would be an example of conscious indifference to an obvious danger, *id.* at 651, but it is a far cry from hiring an intern on a professor's recommendation and then neglecting to monitor the intern. If that is reckless indifference, I do not know what

it means to say that negligent misconduct is not actionable under section 1983.

Running through all the plaintiff's filings is a fundamental misconception: that negligence and deliberate indifference are the same thing. They are not, and the plaintiff has made no effort to establish the latter. At argument her lawyer disclaimed any intention of alleging new facts in the amended complaint that the district judge did not permit him to file. (In response to my question, "So we have all your allegations before us, do we not?" the lawyer answered, "Yeah, I guess you do.") Instead he repeated what he had told the district court, that the original complaint had not been "pled as a complaint in federal court should be pled, with the federal claims first and a statement for the basis of federal jurisdiction. Plaintiff wanted to correct this and otherwise clean up. the ,language in the complaint to keep the record clear." Period. And so I do not understand the significance that my colleagues attach to the district court's refusal to permit the amended complaint to be. filed. They do not point to any facts, whether in the plaintiff's statement of facts or elsewhere, that might support liability or defeat immunity. The only ground for the remand that the majority opinion mentions besides the irrelevant amended complaint is the district judge's failure to explain. why he denied the defendant's plea of immunity. That failure may be regrettable but it is irrelevant, because the question whether a right upon which a suit is based is clearly established is a question of law and we do not defer to the answers that district judges give to such questions.

A remand will serve only to keep a doomed case alive for a little while longer. I don't see the point.