In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3943

Johnnie Mitchell,

Plaintiff-Appellee,

v.

Lonnie Randolph,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 2:98cv0484 AS--Allen Sharp, Judge.

Argued May 8, 2000--Decided June 15, 2000


   Before Posner, Chief Judge, and Bauer, and
Diane P. Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  Johnnie
Mitchell had a successful, and so far as
the record shows, uneventful, career with
the City of East Chicago, Indiana, for 25
years. For much of that time, she had
been a political supporter of Mayor
Robert A. Pastrick. From 1973 to 1998,
she worked as court coordinator for a
judge of the East Chicago City Court,
Judge Del Marie Williams. Judge Williams
died in 1998, however, and on August 3,
1998, her successor was appointed,
defendant Judge Lonnie Randolph. Judge
Randolph, a political foe of Mayor
Pastrick, demoted Mitchell to part-time
status shortly after he was sworn in. He
then restructured her former job, renamed
it "community coordinator," and hired
Charlotte Mahone for the new position.

   Mitchell did not last long under the new
arrangement. She quit in the third week
of August 1998, claiming constructive
discharge, and filed suit under 42 U.S.C.
sec. 1983 against Judge Randolph on
August 27, 1998. She claimed that Judge
Randolph had retaliated against her in
violation of her First Amendment right to
political speech, by demoting and
constructively discharging her. She
included a 42 U.S.C. sec. 1985 claim
against Judge Randolph and Bobby

Cantrell, East Chicago Republican Chairman, who she asserted had phoned her to tell her of her demotion. Mitchell alleged that the two had conspired to deprive her of her constitutional rights. Bobby Cantrell responded with a 12(b)(6) motion to dismiss the charge against him. Judge Randolph filed a motion for summary judgment based on qualified immunity on August 31, 1999. The parties appear to have believed that Mitchell had 30 days to respond to Judge Randolph's motion, perhaps because they assumed that the time period for responding to a summary judgment motion in the federal court matched the 30-day period afforded by Rule 56 of the Indiana Rules of Trial Procedure. (If so, they were unequivocally wrong; Local Rule 56.1 of the U.S. District Court for the Northern District of Indiana provides a 15-day period for a party to respond to a motion for summary judgment.) The district court itself did not establish a deadline for her response.

Confusion erupted on September 24, 1999, when the district court issued an order which dismissed the conspiracy claim and terminated Bobby Cantrell as a defendant, and, in an obscure fashion, appeared to deny Judge Randolph's summary judgment motion. The order also dismissed a discrimination claim which no one, including Mitchell, had ever made or mentioned. Mitchell and Judge Randolphbecame somewhat bewildered. Mitchell, who thought that she still had time to respond to the summary judgment motion, assumed the motion had not been definitively ruled upon. On September 30, 1999, she filed a motion to extend her time to respond until October 29, 1999. The district court, apparently agreeing with her assumption, granted that motion on October 4, 1999. Judge Randolph, also unsure of the status of his summary judgment motion, filed a motion for clarification of the September 24 order on October 15, 1999. The district court responded on October 18, 1999, by ordering a pretrial conference on the issue, to be held October 29, 1999. At that conference, the district court explained that its September 24, 1999, order had indeed denied Judge Randolph's summary judgment motion. (The court never mentioned the fact that Mitchell had not filed a response to Judge Randolph's motion within the 15-day period given by

Local Rule 56.1, and so it is impossible, especially in light of the court's intervening orders, to say whether that factor affected its decision to rule without hearing from her.) The end result was a denial of the summary judgment motion based on a record devoid of anyresponse to the motion by Mitchell.

Judge Randolph appealed the September 24 denial under Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). While the record is far more confused than we would prefer, we conclude that the district court did not err in refusing to resolve the case on qualified immunity grounds, and we therefore affirm.

I

The standards under which we assess a claim of qualified immunity are by now well established. See generally Siegert v. Gilley, 500 U.S. 226 (1991); Harlow v. Fitzgerald, 457 U.S. 800 (1982). First, after a state defendant has properly invoked this defense, the plaintiff must show that her claim states a violation of her constitutional or statutory rights; and second, the plaintiff must show that the applicable legal standards were clearly established at the time the defendants acted. See Harrell v. Cook, 169 F.3d 428, 431 (7th Cir. 1999); see also Denius v. Dunlap, No. 99-1402, 2000 WL 365973, at *3 (7th Cir. April 11, 2000); Coady v. Steil, 187 F.3d 727, 731 (7th Cir. 1999). The procedural posture of the case matters as well. If resolution of a claim of qualified immunity depends on disputed issues of material fact, not only must it await a full trial, but it is also not a proper subject for an interlocutory appeal. See Johnson v. Jones, 515 U.S. 304, 307 (1995); Clash v. Beatty, 77 F.3d 1045, 1048-49 (7th Cir. 1996).

Although the district court nominally resolved the present case upon the defendant judge's motion for summary judgment, a closer examination of the proceedings indicates that this is not quite what happened. Instead, the court pretermitted the normal process by ruling on the defendant's summary judgment motion 35 days before the plaintiff had reason to believe her response was due. (We put it this way because plaintiff thought she had until October 29 to

respond, as that was what the October 4 order said, even though the judge later decided that he had already denied Judge Randolph's motion.) The court's early ruling naturally affected the record that was created for purposes of appellate review, because it effectively prevented the plaintiff from introducing evidence that would have supported the judge's decision that disputed issues of fact existed. The judge's ruling was in favor of the plaintiff's position, which meant that plaintiff had no occasion to supplement the record or to seek reconsideration after the decision was made.

Under these somewhat unusual circumstances, we think the best approach to take is to review the decision denying qualified immunity as if it had been a decision on the pleadings under Fed. R. Civ. P. 12(c). This has several implications. First, it means that we take the facts in the light most favorable to the opponent of the summary judgment motion, and we draw all reasonable inferences from the pleadings in her favor. Second, it means that our decision in this case is based only on the abbreviated record created by the pleadings.

With these precautionary remarks in mind, we turn to Judge Randolph's appeal. It is clear that Mitchell has stated a claim for a deprivation of her constitutional rights. She argues that her demotion and constructive discharge violated her First Amendment right to political speech. To support this claim, she relies on the Supreme Court's political patronage cases, including Elrod v. Burns, 427 U.S. 347 (1976); Branti v. Finkel, 445 U.S. 507 (1980); and Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990). See also O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 718-19 (1996). According to her complaint, she had a low-level, clerical position in the city court office. She had also been a long-time supporter of Judge Randolph's political foe, East Chicago Mayor Pastrick (indeed, Judge Randolph had twice run for Mayor against Mayor Pastrick, both times unsuccessfully). Upon his arrival at the court, Judge Randolph retaliated against her for her political views, first through the

demotion and then through the constructive discharge. Shortly after he demoted Mitchell, Judge Randolph attempted to sanitize his actions by creating a new position that included both Mitchell's old duties and some new responsibilities that entailed more contact with the general public.

These allegations state a claim under the relevant line of First Amendment cases. This is not to say that questions do not remain for later resolution. One such question is whether Mitchell's former job was properly characterized as clerical in nature, or if it was the kind of policy-making or confidential position for which party affiliation is an acceptable requirement. See Branti, 445 U.S. at 518. Another question is whether Judge Randolph's decision to create the new position of community coordinator represented a bona fide desire to re-deploy his office staff, or if it was instead part of a sham designed to facilitate a politically motivated attack against Mitchell. Authority given to the new community coordinator in excess of that ascribed to Mitchell's position by state regulation or common practice might evidence a sham. See, e.g., Meeks v. Grimes, 779 F.2d 417, 420 n.1 (7th Cir. 1985) (asking whether the tasks delegated to a new position were within the inherent power of that position). A third question is whether the new position of community coordinator itself, assuming that it was bona fide, qualified for the policy-making or confidentiality exception to Elrod, Branti, and Rutan. We conclude only that, under Mitchell's alleged facts, Judge Randolph demoted and constructively fired her not because he wanted to reorganize his office, but because he did not want his political foe's supporter answering the telephone, filing warrants, and coordinating pre-trial services in his office. A reasonable trier of fact could find that these tasks are sufficiently clerical, if they indeed represent the sum total of Mitchell's activities, that she was protected against politically motivated retaliation.

The present record does not reveal exactly what positions a city court judge is entitled to create, or what responsibilities he or she may delegate to a person on the court's staff. Like

most states in the United States, Indiana has embraced the principle of separation of powers in its constitution. See Ind. Const. art. III, sec. 1. It has vested the judicial power of the state in its Supreme Court, Court of Appeals, Circuit Courts, and "such other courts as the General Assembly may establish." Id., art. VII, sec. 1. Included among those "other courts" are the city courts, such as the one to which Judge Randolph was appointed. Ind. Code sec. 33-10.1-1-3. Judges of those courts are considered to be "judicial officers" of the State of Indiana for all purposes. See, e.g., Indiana Rules for Admission to the Bar and the Discipline of Attorneys, Rule 25. Article II of those rules defines the term "judicial officer" to include everyone from justices of the Indiana Supreme Court itself and judges of the court of appeals, to tax court judges and judges of any "Circuit, Superior, County, City or Town Court of the State." (Emphasis added.) City court judges are normally elected to office by the voters of the city or town, pursuant to Ind. Code sec. 3-10-6 or sec. 3-10-7. See Ind. Stat. sec. 33-10.1-3-1.1(a). Vacancies that occur between elections are filled by the governor. Ind. Stat. sec. 3-13-8-2. Last, city court judges are subject to the Code of Judicial Conduct that Indiana has enacted for all of its judicial officers. Indiana Rules for Admission to the Bar and the Discipline of Attorneys, Rule 25.

We cannot say on the basis of the present record whether or not the duties Judge Randolph has entrusted to his new community coordinator all fall within the recognized scope of judicial powers or ancillary services, consistently with Indiana law. Perhaps they do. The coordinator's duties are wide-ranging in scope, including expanded services to meet the needs of East Chicago's residents for drug and alcohol treatment programs, referral services for community work programs, a mock court program for local schools, a junior judge program for the high schools, and a mental health referral service. Judge Randolph frankly states in his brief that these programs, as administered by Mahone (Mitchell's replacement), "could have been a significant factor in his successful reelection in November 1999." If this means only that the voters were happy

with an efficient, well run office, there is nothing to criticize. If, however, it means that the judge got Mitchell out of the way so that he could use his judicial office for more executive or politically motivated tasks, the inference that he retaliated against her for her views would be stronger.

We add only a word about the other part of the test for qualified immunity: whether the right in question was clearly established at the time the public official acted. Judge Randolph's actions took place in August 1998, long after the leading Supreme Court decisions in this area were handed down, and long after this court had made clear in a number of cases that political retaliation against lower level employees violated their First Amendment rights. See, e.g., Elrod, 427 U.S. at 350; Branti, 445 U.S. at 516; Flenner v. Sheahan, 107 F.3d 459, 465 (7th Cir. 1997). We stress again that nothing in this decision prevents an elected official (or here, a state judge) from effecting a good faith reorganization of an office. If that turns out to have been Judge Randolph's motivation for his actions against Mitchell, she will lose. If, however, he acted for impermissible political reasons and then shuffled things around to suit his needs, then her First Amendment rights were violated. If his motives were mixed, then under this court's en banc decision in Rakovich v. Wade, 850 F.2d 1180 (7th Cir. 1987), the correct analysis will be the one established in Mt. Healthy City School Dist. v. Doyle, 429 U.S. 274 (1977): the plaintiff must show that the constitutionally protected conduct was a substantial or motivating factor in the public employer's decision, and then (to escape liability) the defendant must show that it would have reached the same decision even in the absence of the protected conduct. 429 U.S. at 287; Rakovich v. Wade, 850 F.2d at 1189. See also Gooden v. Neal, 17 F.3d 925, 928 (7th Cir. 1994).

We therefore affirm the district court's decision to deny Judge Randolph's motion for summary judgment based on the qualified immunity defense.

AFFIRMED.