# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-1591

THOMAS FLANNERY,

*Plaintiff-Appellant,*

*v.*

RECORDING INDUSTRY ASSOCIATION OF AMERICA,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 2734—**James B. Zagel**, *Judge.*

_____

ARGUED SEPTEMBER 3, 2003—DECIDED JANUARY 6, 2004

_____

Before RIPPLE, ROVNER and DIANE P. WOOD, *Circuit Judges.*

RIPPLE, *Circuit Judge.* On October 22, 2001, Thomas Flannery filed his first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). He alleged age and disability discrimination by his former employer, Recording Industry Association of America ("RIAA"), in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101,

et seq. At a later date, not clear from the record, Mr. Flannery filed another charge with the EEOC based on occurrences after his employment ended.

After the EEOC issued a right to sue notice, Mr. Flannery filed a complaint in the United States District Court for the Northern District of Illinois on April 16, 2002, and then an amended complaint on July 11, 2002. In his amended complaint, he stated four counts against RIAA. Counts I and III, alleging discriminatory discharge in violation of the ADEA and ADA, respectively, were based on Mr. Flannery's claim that he was fired after twenty-two years of employment with RIAA because of his age, sixty-three, and because of his disability, heart disease complicated by sleep apnea. Counts II and IV, alleging retaliation in violation of the ADEA and ADA, respectively, were based on Mr. Flannery's claim that RIAA had refused to give him consulting work, which it had earlier agreed to provide to him, after it learned he had filed a charge of discrimination with the EEOC.

On June 10, 2002, RIAA filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). On February 4, 2003, the district court granted RIAA's motion to dismiss as to all counts and entered judgment in RIAA's favor. The district court held the discriminatory discharge claims (Counts I and III) were time-barred, and the retaliation claims (Counts II and IV) were not actionable because retaliation connected to an independent contractor relationship does not have the requisite nexus to an employment relationship. Mr. Flannery timely appealed both of these holdings. Because we are in respectful disagreement with the determinations of the district court, we must reverse its judgment and remand the case for further proceedings.

# I

# BACKGROUND

## A. Facts

Mr. Flannery worked for RIAA as an investigator in RIAA's Oak Brook, Illinois office. In 1997, Mr. Flannery was diagnosed with an irregular heartbeat, and, in August of 2000, he was diagnosed with sleep apnea. In his amended complaint, he maintains that, in a March 2000 meeting, his supervisors told him that he would have to leave his employment because his health was bad and he was getting older. Mr. Flannery responded by telling his supervisors he did not want to leave. At that point, they told him that they would keep him on and see how things went.

Mr. Flannery further contends that, on June 14, 2001, he was told he would be terminated effective October 1, 2001. On the same day, he received a letter from RIAA's vice-president, Frank Walters, explaining the terms of his termination. Mr. Walters' letter set forth three benefits that Mr. Flannery would receive as a result of his departure from RIAA: (1) severance pay; (2) the possibility of continued health benefits; and (3) continued work in a consulting capacity with RIAA. As to the third, the letter explained that Mr. Flannery could expect that his services would be utilized in several different RIAA offices and result in approximately twenty hours of billable work per week. An August 20, 2001 e-mail from Frank Creighton, another RIAA official, to Mr. Flannery stated that he should regard the June 14, 2001 letter as "official notice" of his "current and future status with RIAA." Am. Compl., Ex.B.

Consistent with the June 14, 2001 letter, Mr. Flannery's employment at RIAA ended on October 1, 2001. At the time of his departure, he had worked for RIAA for twenty-two

years and was sixty-three years old. Mr. Flannery filed his first charge of discrimination with the EEOC on October 22, 2001. He was never contacted regarding the consulting work promised in the June 14, 2001 letter.

## B.  District Court Proceedings

On February 4, 2003, the district court granted RIAA's motion to dismiss in its entirety and entered judgment in favor of RIAA. First, the district court determined that the discriminatory discharge claims (Counts I and III) were time-barred. The court noted that in Illinois an employee may sue under the ADEA or ADA only if he files a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice, which in this case was the unlawful discharge. The court further held that the limitations period commenced when RIAA supervisors told Mr. Flannery at the March 2000 meeting that he would have to leave because of his age and health. Because the clock began to run in March of 2000 and Mr. Flannery's first EEOC charge was not filed until October 22, 2001, over 300 days later, the district court held that the discriminatory discharge counts were time-barred. Accordingly, these counts were dismissed.

Next, the district court dismissed the retaliation claims (Counts II and IV) for failure to state a claim upon which relief can be granted. The court first held that, in order to be actionable, retaliation against a former employee must impinge on future employment prospects or otherwise have a nexus to employment. The district court then noted that neither the ADEA nor the ADA generally protects independent contractors. Applying these principles, the court held the alleged retaliation against Mr. Flannery did not

have a nexus to employment because it affected a potential independent contractor relationship, an unprotected status, rather than an employer-employee relationship. Furthermore, the court noted that Mr. Flannery did not allege that RIAA's actions affected any other future prospects for work. Therefore, the retaliation counts failed to state a claim and were dismissed.

## II

## DISCUSSION

We review a district court's grant of a motion to dismiss de novo. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2003). In performing this analysis, we are obliged to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the plaintiff. *See id.* Dismissal under Rule 12(b)(6) is only appropriate when there is no possible interpretation of the complaint under which it can state a claim. *See Martinez v. Hooper*, 148 F.3d 856, 858 (7th Cir. 1998). Applying these standards to this case presents us with two questions: First, is there a reasonable interpretation of Mr. Flannery's complaint under which his discriminatory discharge claims are not time-barred? Second, is there a reasonable interpretation of his complaint under which his retaliation claims state a claim upon which relief can be granted? We shall address each of these questions in turn.

### A. Discriminatory Discharge Claims (Counts I & III)

In Illinois, an employee may sue under the ADEA or ADA only if he files a charge of discrimination with the EEOC within 300 days of the alleged "unlawful employment practice." *See Hamilton v. Komatsu Dresser Indus.*, 964 F.2d 600, 603 (7th Cir. 1992). In discriminatory discharge cases,

two elements are necessary to establish the date on which the "unlawful employment practice" occurred. First, there must be a final, ultimate, non-tentative decision to terminate the employee. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258-59 (1980). However, an employer who communicates a willingness to later change a *final* decision of termination, as through an appeals process, does not render a decision "tentative" and not final for the purposes of beginning the limitations period. *See id.* at 261. Second, the employer must give the employee "unequivocal" notice of its final termination decision. *See Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 486 (7th Cir. 2002). Both of these elements are necessary to start the limitations period; neither alone is sufficient. *See Ricks*, 449 U.S. at 258-59; *Dvorak*, 289 F.3d at 486.

Each party submits a different date as the point in time on which these elements were satisfied. RIAA contends that the March 2000 conversation between Mr. Flannery and his supervisors constituted a final decision with unequivocal notice. In its view, under *Ricks* and *Dvorak*, the clock began to run on that date. RIAA suggests that this decision was perhaps followed by an agreement to reconsider RIAA's final discharge decision, but it submits that any such reconsideration had no effect on the limitations period. Under this version of events, Mr. Flannery's claim is time-barred because his EEOC charge was filed on October 22, 2001, more than 300 days beyond the "unlawful employment practice."

Mr. Flannery disputes this characterization of the March 2000 conversation. He claims that RIAA's decision at the March meeting was tentative and non-final. Furthermore, he submits that, even assuming a final decision was made at that time, the conversation that took place provided him with only equivocal notice. Cast this way, the March 2000

meeting did not start the clock under *Ricks* or *Dvorak*. Mr. Flannery points instead to June 14, 2001, as the date of the final decision and unequivocal notice. His amended complaint explains that, on or about this date, he was informed of RIAA's final decision to terminate him. June 14, 2001 is also the date of Mr. Flannery's termination letter, which another RIAA official later deemed as Mr. Flannery's "official notice" of his "current and future status with RIAA." If June 14, 2001 is the appropriate date, it is within 300 days of October 22, 2001, and his claims are not time-barred.

## 1.

As a threshold matter, RIAA submits that Mr. Flannery's original EEOC charge establishes, as a matter of law, its version of events. As RIAA notes, this court has long held that, when a document contradicts a complaint to which it is attached, the document's facts or allegations trump those in the complaint.[1] *See Thompson v. Illinois Dep't of Prof. Reg.*,

---

[1] RIAA's argument focuses on the EEOC charge as an attachment to the complaint. It does not argue, at least with any force, that Mr. Flannery's allegations within his original complaint estop him from claiming in his amended complaint that March 2000 was not the date of the "unlawful employment action." It is axiomatic that an amended complaint supersedes an original complaint and renders the original complaint void. *See Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961) (rejecting the argument that "the original complaint contained admissions which estop plaintiffs from maintaining their alleged action set forth in the amended complaint"); 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476 (2d ed. 1990). Because the EEOC charge and original complaint contain similar factual descrip-
(continued...)

300 F.3d 750, 754 (7th Cir. 2002). This principle is a sister doctrine of our rule applied in the summary judgment context that a party cannot create a genuine issue of material fact by contradicting prior sworn testimony. *See Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-72 (7th Cir. 1996). Both of these doctrines serve an important purpose of weeding out non-meritorious claims for which a trial is not necessary. *See id.* at 1170.

These doctrines, however, must be applied with caution. As we said in *Bank of Illinois*, "[a] definite distinction must be made between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Id.* at 1169-70 (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)). Credibility and weight are issues of fact for the jury, and we must be careful not to usurp the jury's role. *Id.* at 1170. For this reason, these doctrines are only triggered upon a threshold determination of a "contradiction," which only exists when the statements are "inherently inconsistent," *id.* at 1169 n.10; not when the later statement merely clarifies an earlier statement which is ambiguous or confusing on a particular issue, *id.* at 1171-72.

Mr. Flannery's EEOC charge, in a section entitled "DATE DISCRIMINATION TOOK PLACE," describes the "*EARLIEST*" date of discrimination as "March 2000" and the "*LATEST*" date as "Oct. 2001." The attached explanation of the "PARTICULARS" of the alleged discrimination explains in relevant part:

---

[1] (...continued)
tions, however, we shall discuss them together, even though the original complaint is not relevant to the doctrine on which RIAA bases its argument.

>    In March 2000, my supervisors, Frank Creighton and
>    Frank Walters, told me that I would have to leave my
>    employment because my health was bad and I was
>    getting older. Frank Creighton told me that he would
>    keep me on for a period of time so that I could train new
>    hires. In August 2000, I was diagnosed with sleep
>    apnea. I was discharged from my employment effective
>    October 1, 2001.

Original Compl., Ex.A. Mr. Flannery's original complaint
contained a similar account of the March 2000 meeting. *See*
Original Compl. ¶ 5. In his amended complaint, Mr.
Flannery sets forth the following version of events:

>    In March 2000, plaintiff's supervisors told him that
>    he would have to leave his employment because his
>    health was bad and because he was getting older.
>    Plaintiff told his supervisors that he did not want to
>    leave. Plaintiff's supervisors told him that they would
>    keep him on and see how things went. They also told
>    him that he would be responsible for training new hires.
>    In August 2000, plaintiff was diagnosed with sleep
>    apnea. On or about June 14, 2001, plaintiff was informed
>    by his supervisor that he would be terminated effective
>    October 1, 2001. See Exhibit A hereto. Plaintiff was told
>    that this would serve as official notice of his termina-
>    tion. See Exhibit B hereto.

Am. Compl. ¶¶ 5-7. Exhibit A is the June 14, 2001 letter
from Mr. Walters to Mr. Flannery, which begins: "Per our
discussions, please see the proposed severance package
offered to you by the RIAA. Your final day of employment
will be October 1, 2001." Exhibit B is the subsequent e-mail
from Mr. Creighton, which states in relevant part: "I
instructed Frank [Walters] to send you the attached notice.
As your current supervisor, it was appropriate that it come
from him. I reviewed and approved the document before it

was sent, therefore it stands as official notice of your current and future status with RIAA."

Applying these principles to the EEOC charge and original complaint as well as to the amended complaint, we must conclude that the documents' respective version of events are not so "inherently inconsistent" as to necessitate judgment in RIAA's favor. Neither the EEOC rules governing charge forms nor the notice pleading requirements mandate a detailed elaboration of the events underlying the plaintiff's claim. *See* 29 C.F.R. § 1601.12(a)-(b) (An EEOC charge should state a "clear and concise statement of the facts, including pertinent dates" but is valid if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of."); *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("All that need be specified [in a plaintiff's complaint] is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."). In his EEOC charge and complaint, Mr. Flannery set forth a terse explanation of the March 2000 meeting, which was all he was required to do. A description of that meeting in particular was necessary not because it was the date on which RIAA had made the final decision to fire him, but because, at that meeting, RIAA officials had identified specifically his age and health as the reasons for his dismissal. These factors were, of course, the essential elements of his discrimination claims. Notably, the description of the March 2000 meeting is provided in the section of the EEOC charge form for "PARTICULARS" of the alleged discrimination. In the section of the charge form entitled "DATE DISCRIMINATION TOOK PLACE," on the other hand, "March 2000" is identified as the "*EARLIEST*" date and "Oct. 2001" as the "*LATEST*." The amended complaint, in turn, elaborates and clarifies that, in the March 2000 meeting, Mr. Flannery had responded to his supervi-

sors' statement that he would "have to leave" by informing them he did not want to leave, and his supervisors had responded by agreeing to keep him on to see how things went. It also provides a very plausible account as to why the final termination decision and unequivocal notice were not accomplished until June 14, 2001.

The statements at issue could be read differently and infer an inconsistency, but the mere necessity of making that inference confirms that the inconsistency is not inherent. As was noted at oral argument, RIAA may utilize both the EEOC charge and the original complaint as impeaching evidence at trial, and a jury might be persuaded that the statements in the EEOC charge and the original complaint about the March 2000 meeting foreclose Mr. Flannery's elaboration in his amended complaint. *See, e.g.*, *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961) (noting the defendants could enter a superseded complaint into evidence at trial but the plaintiffs could also explain alleged admissions in the superseded complaint); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983) ("Admissions made in superseded pleadings are as a general rule considered to lose their binding force, and to have value only as evidentiary admissions."); 30B Michael H. Graham, Federal Practice and Procedure § 7026 (interim ed. 2000) (explaining that statements in superseded or withdrawn pleadings constitute "evidentiary," as opposed to "judicial," admissions, which "may be controverted or explained by the party"); *cf. Phillips v. Union Carbide*, 2003 WL 1873086, at *2 (E.D. La. 2003) ("This more recent answer in 2003, contradicts Plaintiff's earlier admissions in her EEOC charge and her deposition testimony discussed above, and creates a disputed issue of fact."). However, we do not believe the documents are so inconsistent so as to foreclose Mr. Flannery's claims at this early stage.

**2.**

We therefore return to the question of the proper date of the "unlawful employment practice" with our focus solely on the amended complaint. Two principles guide our determination on this question. First, it bears repeating that, because this case comes to us on a motion to dismiss, we must consider all the alleged facts in the amended complaint as true, draw all reasonable inferences in favor of Mr. Flannery, and ask "whether there is any possible interpretation of the complaint under which it can state a claim." *Martinez v. Hooper*, 148 F.3d 856, 858 (7th Cir. 1998). Second, our cases hold that the date on which an unlawful employment practice occurs—in this case, when a termination decision is final and when unequivocal notice is given—is a question of fact. *See Lever v. Northwestern Univ.*, 979 F.2d 552, 557 (7th Cir. 1992).

Taking these two principles together, the amended complaint alleges that, at the March 2000 meeting, RIAA officials initially told Mr. Flannery he would "have to leave," but that, by the end of the meeting, they had agreed, at Mr. Flannery's request, to keep him on and see how things went. Under these facts, a plausible interpretation of the March 2000 decision is that any decision was "tentative," *Ricks*, 449 U.S. at 261, not a "concrete act [which] smack[ed] of finality," *Lever*, 979 F.2d at 554. It also is at least as plausible that the other date presented to us by Mr. Flannery, June 14, 2001, was the date of the final termination decision. According to his allegations, on or about June 14, 2001, Mr. Flannery was told that he would be terminated effective October 1, 2001. The letter from Mr. Walters describing the benefits he would receive upon his termination was also dated June 14, 2001. Finally, that letter was subsequently identified by Mr. Creighton as Mr. Flannery's "official notice" of his "current and future status with

RIAA." Am. Compl., Ex.B. We do not mean to imply that *Ricks* and *Lever* necessarily require that a definitive termination date must be given, or that the termination decision must be memorialized in an "official" communication, in order for the employer's decision to be "final." *See Ricks*, 449 U.S. at 257 ("Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination."); *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 288 (7th Cir. 1986). Our only holding is that these facts, taken together, and assumed to be true, permit the conclusion that the final termination decision was not made until June 14, 2001.

Furthermore, even assuming that a final decision was made at the March 2000 meeting, the tentativeness of RIAA officials at that meeting permit an interpretation that, at that time, RIAA failed to give Mr. Flannery the requisite unequivocal notice. As we have previously noted, notice to the employee is only sufficient if it provides a *"clear intention* to dispense with the employee's services." *Dvorak*, 289 F.3d at 486 (emphasis added). Requiring employees like Mr. Flannery to file EEOC charges on the basis of ambiguous conversations regarding termination would cause a flood of false charges; litigants would be forced to file a charge at every hint of termination in order to preserve their claims. *See Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 849 (11th Cir. 2000). The concomitant burden upon the EEOC would impact significantly the enforcement function of the agency.

In sum, according to the amended complaint, on or about June 14, 2001, Mr. Flannery was first told of RIAA's final decision to terminate him. At the same time, he received a termination letter later deemed an "official notice" of his future status with RIAA. Assuming these facts are true, the first date on which Mr. Flannery received unequivocal

notice is a close call as between March of 2000 and June 14, 2001. It certainly cannot be decided at this early stage of the litigation. Again, we do not mean to suggest that for a notice to be operable it must necessarily be written or "official"; however, it must be "unequivocal." *See Mull*, 784 F.2d at 288 ("[U]nder *Ricks* and its progeny unequivocal notice of termination is all that is required to start the limitations period running; it is not necessary for such notice to be in writing."). We hold only that the facts in the amended complaint permit the conclusion that the first date of unequivocal notice of termination, like the date of the final termination decision, was June 14, 2001. We must therefore reverse the district court's holding that Mr. Flannery's discriminatory discharge claims are time-barred.

## B. Retaliation Claims (Counts II & IV)

Both the ADEA and the ADA prohibit retaliation against an employee for having filed a charge of discrimination. *See* 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 12203(a) (ADA). Mr. Flannery alleged in his amended complaint that RIAA had retaliated against him for filing a charge of discrimination with the EEOC by refusing to give him consulting or independent contractor work that had been promised to him before he left RIAA. The June 14, 2001 letter, which set forth three benefits that Mr. Flannery would or could receive upon his termination, memorialized the third benefit, the consulting agreement, as follows:

> As we discussed, after October 1, 2001, the RIAA would utilize your services as an Investigative Consultant. Your fee would be $60.00 an hour and .40 per miles for personal vehicle use. You would be compensated for attendance at any court hearings, trials on other matters relating to cases currently pending and for cases you

> generate after October 1, 2001. We would anticipate that your services will be utilized by a number of RIAA offices and result in approximately 20 hours of billable work per week.

Am. Compl., Ex.A.

Both parties agree that the ADEA and ADA only protect "employees" and not independent contractors. *See Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998). Thus, independent contractors do not have standing to sue under these statutes. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 805 (7th Cir. 1999). However, Mr. Flannery is not suing as an independent contractor, but as a former employee of RIAA. As we said in *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881 (7th Cir. 1996), "former employees, in so far as they are complaining of retaliation that impinges on their future employment prospects or otherwise has a nexus to employment, do have the right to sue their former employers."[2] *Id.* at 891. RIAA argues, consistent with the district court, that Mr. Flannery's claim is nevertheless barred because retaliation with respect to an independent contracting agreement lacks an employment nexus, even if that agreement flows from an employer-employee relationship. We respectfully disagree.[3]

---

[2]  *Veprinsky* was addressing Title VII, but its principle governs in the ADEA and ADA context as well. *See, e.g.*, *Nawrot v. CPC Int'l*, 277 F.3d 896 (7th Cir. 2002) (addressing discrimination and retaliation claims brought by a former employee under the ADEA and ADA).

[3]  Mr. Flannery also argues that his retaliation claims are actionable even if the alleged retaliatory actions taken by RIAA lack a nexus to employment. This circuit has not been entirely clear on whether an employment nexus is necessary to state a retaliation

(continued...)

It is unquestionable that Mr. Flannery's consulting arrangement grew out of his employment relationship with RIAA. The cases on which Mr. Flannery was to work as an investigative consultant after his employment ended were some of the same cases he was working on as an employee. More importantly, the independent contracting arrangement was one part of his severance package from RIAA. The June 14, 2001 letter from Mr. Walters set forth three benefits Mr. Flannery would or could receive upon his separation from RIAA: (1) severance pay; (2) the possibility of health benefits; and (3) the consulting arrangement. Because this package grew out of his employment with RIAA, denial as to any part of the package would satisfy the employment nexus. *See, e.g.*, *Jones v. Ryder Servs. Corp.*, 1997 WL 158329, at *5 (N.D. Ill. 1997) (holding that withdrawing a workers' compensation settlement offer constituted actionable retaliation). The mere fact that part of the severance package was a consulting arrangement does not destroy the preexisting employer-employee nexus.

---

[3] (...continued)
claim. *Compare Johnson v. Cambridge Indus.*, 325 F.3d 892, 902 (7th Cir. 2003) (Adverse action "will not always be employment-related" but the employee must show "real harm.") *with Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 533 (7th Cir. 2003) (To state a claim for retaliation, the plaintiff must allege an "adverse employment reaction."). Other circuits are split on the matter. *See Ray v. Henderson*, 217 F.3d 1234, 1240-43 (9th Cir. 2000) (discussing the split in circuits). Because we hold the retaliatory acts Mr. Flannery has alleged have a nexus to employment, it is not necessary for us to definitively resolve this issue in this case. Therefore, for purposes of our analysis, we proceed under the assumption that an employment nexus is required for a valid retaliation claim under the ADEA and ADA.

The very purpose of the retaliation provisions is to prevent employers from deterring employees from exercising their rights, including the right to file a charge of discrimination. *See EEOC v. Bd. of Governors of State Colls. and Univs.*, 957 F.2d 424, 431 (7th Cir. 1992). An employer's withdrawal of part of an employee's severance package, occurring at a time when the departing employee is most vulnerable, undoubtedly would make other employees think twice before filing a discriminatory termination charge. Our holding is further supported by the only case cited to us that is directly on point, *Elliot v. British Tourist Auth.*, 172 F. Supp. 2d 395 (S.D.N.Y. 2001). In *Elliot*, the plaintiff alleged that, as retaliation for filing a charge of age discrimination, his employer had withdrawn its pre-termination offer of consulting work to him. *Id.* at 403. Although the court ultimately ruled his retaliation claims were not actionable for other reasons, it held that an employer's failure to give a former employee consulting work which it promised he would get before he was terminated stated "a prima facie case of retaliation that would survive a motion to dismiss under Rule 12(b)." *Id.* at 404. We agree with *Elliot* and hold that Mr. Flannery's retaliation claims have the requisite nexus to employment and are thus actionable.

Mr. Flannery further submits that the denial of consulting work will affect his future employment prospects by denying him potential contacts in the industry which in turn could produce other employment.[4] *See Veprinsky*, 87 F.3d at

---

[4] RIAA argues that this aspect of Mr. Flannery's retaliation claim is waived because he failed to present it to the district court. *See Datamatic Servs., Inc. v. United States*, 909 F.2d 1029, 1034 (7th Cir. 1990). Mr. Flannery's brief in opposition to RIAA's motion to

(continued...)

891 ("[F]ormer employees, in so far as they are complaining of retaliation that *impinges on their future employment prospects* or otherwise has a nexus to employment do have the right to sue their former employers." (emphasis added)). RIAA correctly notes that retaliation claims must be based on facts, and not on speculative theories. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation; instead, plaintiffs must produce facts which somehow tie the adverse decision to the plaintiffs' protected actions."). However, Mr. Flannery has set forth sufficient facts to permit the inference that the consulting contract is a significant bridge to his future career prospects. Under the consulting arrangement, Mr. Flannery was to receive approximately twenty hours per week of consulting work at various RIAA offices. At this stage of the proceedings, we cannot say that such an opportunity is not a sufficient amount of professional activity to have a significant effect on his future employment prospects.

In sum, then, we hold that the denial of promised consulting work arising out of Mr. Flannery's employment has

---

[4] (...continued)
dismiss does not specifically allege that the denial of consulting will affect his future employment prospects. *See* R.5 at 5-7. In its order, the district court also stated: "Mr. Flannery does not allege that RIAA's actions affected any other future prospects." *See* R.7. However, the issue of whether Mr. Flannery's retaliation claims have a sufficient nexus to employment was clearly before the district court. Because, in the context presented by this complaint, this aspect of Mr. Flannery's retaliation claim is part and parcel of that same issue, we conclude it is not waived for purposes of this appeal.

a nexus to his employment and also could have an effect on future employment prospects. For these reasons, we must reverse the district court's dismissal of his retaliation claims for failure to state a claim upon which relief can be granted.

## Conclusion

For the foregoing reasons, we reverse the judgment of the district court, and the case is remanded to the district court for proceedings consistent with this opinion. Mr. Flannery may recover his costs in this court.

REVERSED and REMANDED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*