David IRVING, Plaintiff–Appellant,

v.

CITY OF ELKHART and Edward Anderson, Defendants–Appellees.

No. 03–2422.

United States Court of Appeals, Seventh Circuit.

Submitted March 2, 2004.

Decided April 1, 2004.

Douglas M. Grimes, Gary, IN, for Plaintiff–Appellant.

William W. Kurnik, Knight, Hoppe, Kurnik & Knight, Des Plaines, IL, for Defendants–Appellees.

Before CUDAHY, RIPPLE and DIANE P. WOOD, Circuit Judges.

ORDER

David Irving, an African–American forklift driver for the city of Elkhart, was asked by his supervisor to unload property in violation of a city code. Not wanting to subject himself to discharge for being insubordinate, Irving followed his supervisor's instructions. Although he was never suspended, reprimanded or terminated, he feared future punishment from his employer for the unlawful activity, and brought this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983, and 42 U.S.C. § 1981, alleging that he was a victim of race discrimination and retaliation. The district court granted summary judgment because Irving failed to show that he suffered an adverse employment action. We affirm the district court's judgment.

Irving worked as a mechanic and maintenance assistant in Elkhart's Public Works Maintenance Department for fifteen years. In September 2000, Edwin Anderson (incorrectly sued as Edward Anderson), his supervisor, ordered him to unload a private contractor's truck making a delivery to a nearby McDonald's under construction because the contractor's forklift driver had not shown up for work that day. According to Anderson, he gave Irving this order because he wanted to be a "good neighbor" by helping the contractor unload his goods and Irving was the only employee available at the time to help. The McDonald's was located on private property, and Irving unloaded the truck during work hours.

Under city policies then in effect, employees who removed city property from work without authorization of a department head, or disobeyed direct orders of an immediate supervisor, were subject to discipline, including discharge. Because Anderson was not the department head, Irving violated city policy by following Anderson's instructions to remove the forklift from city property in order to help the contractor. On the other hand, any disregard of Anderson's order would also have violated city policy, subjecting Irving to discipline. Thus, Irving was faced with—in the district court's words—a "Hobson's choice."

Irving suggested that this mistreatment continued a pattern consistent with six pri-

or incidents in which he was subjected to discrimination at the city: 1) in 1993 Irving's supervisor changed the job description of a job to which Irving was to be promoted in order to make Irving an "at will" employee; 2) in 1994 three white males with less seniority than Irving were promoted to a mechanic position and Irving's mechanic position was eliminated; 3) in 1996 Irving asserts that he was improperly prevented from filing a claim for disability benefits after he underwent a heart transplant; 4) in February 2000 a coworker called him "sunshine"; 5) also in February 2000 the Human Resources Director failed to seriously address his comments about the non-promotion of minorities; and 6) in July 2000, Irving had a dispute with the city about leave pay that he believed was motivated by discriminatory animus.

Irving was never disciplined or threatened with discipline for using his forklift on private property. Fearing that he would be, however, he filed a complaint with the Equal Employment Opportunity Commission (EEOC) and brought this Title VII suit in federal court, alleging that Anderson ordered him to violate city policy because of his race and in retaliation for his past complaints of discrimination. Irving also sued the city under 42 U.S.C. § 1983, claiming that Anderson issued the inappropriate order in retaliation for his past complaints of discrimination; that this retaliatory order violated his First Amendment right to complain about discrimination and file charges with the EEOC; and that this order violated his right to equal protection under the law. He also sued the city and Anderson under 42 U.S.C. § 1981, alleging that the order denied him the same rights as white employees to perform under the employment contract with the city.

The district court granted summary judgment to defendants because Irving failed to show that he suffered any material adverse employment action. The court concluded that "Irving's fear that something bad may happen"—a "kind of Sword of Damocles that hangs over Mr. Irving's personnel file"—fell "well short" of an adverse employment action.

We review *de novo* the district court's decision to grant summary judgment to the city. *See Flannery v. Recording Indus. Assoc. of America,* 354 F.3d 632, 637 (7th Cir.2004). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted if there remains no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We review the facts in the light most favorable to the nonmoving party to determine whether there remains a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Because Irving presented no direct evidence of discrimination, he must proceed under the *McDonnell Douglas* indirect method of proof, which requires him to establish that he: 1) belongs to a protected class; 2) was performing his job in a satisfactory manner; 3) was subjected to an adverse employment action; and 4) similarly situated employees outside his protected class were treated more fairly. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1061 (7th Cir.2003). This circuit employs the same analytical framework for Title VII and § 1981 claims, *see Lalvani v. Cook County, Ill.,* 269 F.3d 785, 789 (7th Cir.2001), and for § 1983 claims alleging denial of equal protection by pub-

lic employers. *McPhaul v. Board of Comm'rs of Madison County,* 226 F.3d 558, 564 (7th Cir.2000).

■ Irving challenges the district court's conclusion that he could not meet the third prong of the *McDonnell Douglas* test, namely that he did not suffer an adverse employment action. Irving's argument presents a rather peculiar understanding of adverse employment action: he argues that Anderson's order to him to violate city policy was itself an adverse action because it harmed him by "singling him out and directing him to violate the terms and conditions of his employment by using public property for private off-site use on city time that no other similarly situated employee had been required to do."

An adverse employment action must be "materially adverse"; it must "significantly alter" the terms and conditions of employment, and be more disruptive than a mere "inconvenience" or "change in job responsibilities." *Griffin v. Potter,* 356 F.3d 824, 829 (7th Cir.2004). Here, there was no change in the terms and conditions of Irving's job. Even though Irving may have feared possible termination as a result of complying with Anderson's request, the mere prospect of harm does not constitute an adverse employment action. *See Ajayi v. Aramark Bus. Serv., Inc.,* 336 F.3d 520, 531 (7th Cir.2003). In *Ajayi,* the plaintiff received a letter stating that she would be demoted in two weeks, but the demotion never occurred. The court held that "an unfulfilled threat, which results in no material harm, is not materially adverse." *Id.* Irving argues that he might be subject to future harm, but as the city vividly remarked in its pleadings in the district court: a "time bomb ticking in one's personnel file is not an adverse action until it explodes." Because Irving cannot show that Anderson's request led to any materi-ally adverse change in the terms or conditions of his employment, he has not satisfied his prima facie case.

■ Even if Irving had established a prima facie case, he has not refuted Anderson's non-discriminatory reason for ordering Irving to unload the truck—that Anderson wanted to be a "good neighbor," and Irving was the only employee available to help at the time—as a phony one. *See Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 467 (7th Cir.2002). Because Irving does not offer any evidence to show that Anderson's reason for ordering Irving to violate city policy was a pretext for discrimination, his discrimination claim must fail.

AFFIRMED.