# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-4268

JET, INC., d/b/a GARFIELD SHELL, d/b/a
SHELL FOOD MART, TVA CORPORATION,
d/b/a ROBERT ROAD SHELL, et al.,

*Plaintiffs-Appellants*,

*v.*

SHELL OIL COMPANY, EQUILON ENTERPRISES,
d/b/a SHELL OIL PRODUCTS U.S. and EQUIVA
SERVICES,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 2289—**Matthew F. Kennelly**, *Judge.*

_____

SUBMITTED MAY 24, 2004—DECIDED AUGUST 24, 2004

_____

Before RIPPLE, MANION, and EVANS, *Circuit Judges.*

MANION, *Circuit Judge.* Several independent franchisees
of Shell-branded filling stations ("the franchisees") alleged
that Shell Oil Company, Equilon Enterprises, Incorporated,
and Equiva Services, LLC, violated 15 U.S.C. § 2805(f), a pro-
vision of the Petroleum Marketing Practices Act ("PMPA"),
by presenting them with a new set of franchise agreements
in a "take it or leave it manner" and thus committing wrongful

nonrenewal under the PMPA. The franchisees also alleged, however, that they actually had renewed their franchise agreements. The district court concluded that the PMPA does not permit claims for constructive nonrenewal and therefore dismissed the claim under Federal Rule of Civil Procedure 12(b)(6). We affirm.

## I.

Because of this case's procedural posture, we assume that the complaint's allegations are true. The relevant facts are few. The franchisees originally had franchise agreements with Shell. In 1998, Shell assigned those agreements to Equilon. Shell and Equilon both use another entity, Equiva, to provide administrative support. The franchisees allege that all three companies are alter egos and have named all three as defendants.

Equilon provided the franchisees with new franchise agreements that, in the franchisees' view, contained illegal and unconscionable provisions, including "unlawful waivers, forfeitures, penalties, limitations of liability, reductions of the applicable statute of limitations . . . , unconscionable penalties in the form of liquidated damages, commercially unreasonable and excessive transfer fees and unreasonable restraints on alienation of the franchisee's interest in the franchise in the form of a unilateral consent clause giving Equilon or Equiva the unilateral right to approve or disapprove of a proposed sale or conveyance of the franchisee's interest in the franchises." According to the franchisees, Equilon's ulterior (and unlawful) motive was to prevent them from renewing their franchises.

The terms of the new agreements were not negotiable: Equilon stated in the cover letter accompanying the new agreements that, "[i]f you do not sign and return the Lease

and other enclosed documents in a timely manner, be advised that Equilon will issue without further warning a non-rescindable notice of nonrenewal pursuant to the terms of the Petroleum Marketing Practices Act."[1] The franchisees signed the new franchise agreements "under protest," thus renewing their contracts, but nonetheless sued in the district court under what they term a theory of "constructive non-renewal." Pursuant to Rule 12(b)(6), the district court granted a motion to dismiss their claim, reasoning that a claim for constructive nonrenewal may not lie under the PMPA.[2]

## II.

We review de novo the district court's grant of a motion to dismiss under Rule 12(b)(6). *E.g.*, *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004). Accepting all well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiffs, we ask whether there is any possible interpretation of the complaint under which it could state a claim. *Id.*

The PMPA prohibits a franchisor from discontinuing a franchise relationship unless it does so on the basis of one of several statutorily enumerated grounds and meets the PMPA's notification requirements. *Dersch Energies, Inc. v.*

[1] As we discuss in detail below, a notice of nonrenewal gives the franchisee a chance to seek injunctive relief and to avoid the harmful effects of a wrongful nonrenewal.

[2] There were other claims below, including a claim for wrongful termination, which the district court eventually dismissed. Because the franchisees appeal only the dismissal of their claim for constructive nonrenewal, however, our analysis is limited to that issue.

*Shell Oil Co.*, 314 F.3d 846, 856 (7th Cir. 2002). A franchisee may bring an action for wrongful nonrenewal under the PMPA provided, among other things, that it meets the threshold requirement of showing that its franchise agreement was not renewed within the meaning of 28 U.S.C. § 2805(c). *Id.*; *Chestnut Hill Gulf v. Cumberland Farms*, 940 F.2d 744, 748 (1st Cir. 1991).[3]

In November 2002, the district court dismissed the franchisees' claim of wrongful nonrenewal on the ground that it failed this threshold test. The court reasoned that, (1) because the franchisees alleged that they had renewed their franchise agreements (albeit "under protest"), they were asserting a claim for constructive, as opposed to actual, nonrenewal, and (2) relief under § 2805(f) could not be granted for a claim of constructive nonrenewal. Thus did the district court foreshadow our opinion one month later in *Dersch*, in which the plaintiff had likewise signed a renewal agreement "under protest" and in which we rejected the theory of constructive nonrenewal as "untenable." *Dersch*, 314 F.3d at 860; *accord Abrams v. Shell Oil Co.*, 343 F.3d 482, 489 (5th Cir. 2003). *But see Pro Sales, Inc. v. Texaco, U.S.A.*, 792 F.2d 1394, 1399 (9th Cir. 1986). We stated that,

> [w]hile it is true that § 2805(f)(1) was enacted to address the disparity of bargaining power existing between franchisors and franchise[es] outside the termination/nonrenewal context, i.e., during the negotiation process for entering into or renewing a franchise relationship, there is nothing in the PMPA suggesting that Congress

---

[3] As we discuss below, a franchisee also has a remedy available before there ever is a nonrenewal. It may seek a preliminary injunction under the PMPA after receiving a notice of nonrenewal, thus forestalling the harmful effects of a wrongful nonrenewal. 15 U.S.C. § 2805(b); *Dersch*, 314 F.3d at 862.

intended for franchisees to sue franchisors under the Act's remedial provisions for violations of § 2805(f)(1) when a termination or nonrenewal is not at issue.

*Dersch*, 314 F.3d at 860-611.

On appeal, the franchisees first ask us to reconsider our holding in *Dersch*. They encourage us to follow the reasoning of *Pro Sales*, which we expressly rejected in *Dersch*. The franchisees do not, however, present any developed argument in favor of the *Pro Sales* approach, and they present no argument at all that we have not already rejected. Because the franchisees have done nothing to undermine our confidence in the detailed analysis upon which we decided *Dersch*, we decline to revisit the holding of that case.

The franchisees next attempt to distinguish *Dersch*, arguing that this case is somehow different because, here, Equilon expressed in writing an intent not to renew unless the franchisees signed the new franchise agreements. In so arguing, the franchisees rely on footnote 20 of *Dersch*, in which we stated that a formal expression of the intent not to renew, or an actual nonrenewal, could justify a claim for wrongful nonrenewal. *See Dersch*, 314 F.3d at 866 n.20.

The franchisees misplace their reliance on *Dersch*. To explain why, we must first examine the purpose of a notice of the intent not to renew. Before a franchisor may elect not to renew a franchise contract, § 2804 of the PMPA mandates that it must issue a notice of nonrenewal to the franchisee 90 days in advance. *Id.* at 862. The function of this requirement is to give the franchisee a chance to seek injunctive relief under the PMPA and to avoid the harmful effects of a wrongful nonrenewal. *Id.* at 862-63, 865. In *Dersch*, we made clear that, where the franchisor jumps the gun and actually causes nonrenewal without notice, a harmed franchisee would not, perversely, be precluded from bringing suit by the franchisor's procedural miscue. We put it thus:

> if the actions of a franchisor indirectly result in a termi-
> nation or nonrenewal (e.g., an assignment of the fran-
> chise), and no notice is issued in conjunction with that
> action, the franchisee is clearly not precluded from
> filing suit under the PMPA, even in the absence of such
> notice. . . . The central inquiry in both instances is
> whether the franchisor has terminated the franchisee's
> statutory franchise or failed to renew the parties' fran-
> chise relationship, or formally expressed its intent to do
> so.

*Id.* at 866 n.20.

In other words, in *Dersch* we acknowledged a claim for wrongful nonrenewal where there is either (1) actual nonre-newal or (2) formal notice under § 2804. We did not suggest that a claim for wrongful nonrenewal may proceed where, as here, neither condition is met.[4]

We also observe that the franchisees here are not in a ma-terially different position than was the plaintiff in *Dersch*. In each case, the plaintiff(s) faced Equilon's expression of the intent not to renew—*if* the franchisees did not accept the changes they were protesting. Thus the intent not to renew was contingent on the rejection of Equilon's proposed renewal agreement. An offer to "take it or leave it" can be labeled a conditional intent not to form a contract. (So, for that matter, can it be labeled the conditional intent *to* form a contract.) Yet that is precisely what occurred in *Dersch*,

---

[4]  As discussed above, there was no actual nonrenewal in this case. There also was no formal notice of nonrenewal pursuant to § 2804, as the franchisees admit in their opening brief. Instead, when confronted with a threat of nonrenewal, the franchisees renewed "under protest." This eliminated the need to issue the formal 90 day notice of nonrenewal.

where we held that the offer of a franchise renewal on a take-it-or-leave-it basis (i.e., the expression of the conditional intent not to renew) did not give rise to a claim for wrongful nonrenewal under the PMPA. *See id.* at 860. The franchisees here encountered the same choice as did Dersch: either sign the proposed renewal agreement as written or refuse to sign it and employ the provisions of § 2805 upon service of the notice of nonrenewal.

## III.

Because the franchisees renewed their franchise agreements with Equilon, they have failed to state claim for wrongful nonrenewal under the PMPA.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*